## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| IN RE:<br><br>**Pamela Jean Wellons,**<br>         **Debtor(s).** | **CHAPTER 13**<br>**CASE NO.: 21-10464** |
| – – – – – – – – – – – – – – – – – –<br>– – | – – – – – – – – – – – – – – – – – –<br>– – |
| **SELENE FINANCE LP**<br>                        Movant,<br>v.<br><br>**Pamela Jean Wellons,**<br>         **Debtor(s).**<br><br>**Jonathan W. DeLoach,**<br>         **Trustee,**<br>                        Respondents. | CONTESTED MATTER |

## NOTICE OF HEARING

MOVANT HAS FILED DOCUMENTS WITH THE COURT TO OBTAIN RELIEF
FROM THE AUTOMATIC STAY

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully
and discuss them with your attorney, if you have one in this bankruptcy case. If you
do not have an attorney, you may wish to consult one. If not served with this notice
in accordance with the Bankruptcy Code or the Federal Rules of Bankruptcy
Procedure, a copy of the motion may be obtained upon written request to counsel
for the Movant (identified below) or at the Clerk's office.**

Please check the "Important Information Regarding Court Operations During COVID-19
Outbreak" on the Court's website at www.gamb.uscourts.gov and refer to Administrative
Orders 137 and 139 for information regarding the telephonic hearing call-in number and
participation codes for the judge assigned to this case. Call-in numbers and participation
codes can also be found on each judge's web page on the Court's website.

If you do not want the court to grant relief from the automatic stay, or if you want the
court to consider your views on the motion, then you and/or your attorney shall attend the
hearing scheduled to be held on **December 10, 2021 at 10:00 a.m. in United States
Bankruptcy Court, C.B. KING U.S. COURTHOUSE, 2ND FLOOR
COURTROOM, 201 BROAD AVE., ALBANY, GEORGIA 31701.** If you are receiving
this notice by mail, you may add 3 days to the response date, in accordance with FRBP 9006(f).

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.**

This notice is sent by the undersigned pursuant to LBR 9004-1(c) and LBR 9007-1.

Date: November 16, 2021

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Movant
Georgia Bar #432863
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| IN RE:<br><br>**Pamela Jean Wellons,**<br><br>     **Debtor(s).** | **CHAPTER 13**<br>**CASE NO.: 21-10464** |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| **SELENE FINANCE LP,**<br>                    Movant,<br>v.<br><br>**Pamela Jean Wellons,**<br><br>     **Debtor(s).**<br><br>**Jonathan W. DeLoach,**<br><br>     **Trustee,**<br>                 Respondents. | CONTESTED MATTER |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**WITH WAIVER OF 30-DAY REQUIREMENT OF 11 U.S.C. § 362(e)**

COMES NOW, SELENE FINANCE LP, (hereinafter referred to as "Movant"),

by and through its undersigned counsel, moves for relief from the automatic stay and

alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362 FRBP

4001(a), and the various other applicable provisions of the United States Bankruptcy

Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of

America.

2.

Pamela Jean Wellons, (hereinafter referred to as "Debtor(s)"), filed a petition for

relief under Chapter 13 of the Bankruptcy Code on August 13, 2021.

3.

Movant is the holder or servicer of a loan secured by certain real property in
which the Debtor(s) have an interest.  Movant holds a security interest in the Debtor's
real property now or formerly known as 602 East 3rd Avenue, Cordele, Georgia 31015
(hereinafter referred to as "Property") by virtue of a Security Deed dated May 9, 2007.
Said Security Deed secures a Note in the original principal amount of $62,272.00.  The
promissory note has been duly endorsed.  Secured Creditor is the holder of the note
("noteholder"), and is either the original mortgagee, beneficiary or assignee of the
security instrument for the referenced loan.  Noteholder directly or through an agent has
possession of the promissory note and the promissory note is either made payable to
noteholder or has been duly endorsed.

4.

Movant alleges that the Debtor(s) are in default to Movant under the terms of the
loan documents, having failed to make certain post-petition mortgage payments that have
come due.  As of November 3, 2021, the post-petition arrearage owed to Movant is
$1,112.69 and consists of three (3) monthly mortgage payments at $554.50, less a
suspense balance of $550.81. An additional payment will come due December 1, 2021
and on the first day of each month thereafter until the loan is paid in full.

5.

Movant further alleges there appears to be no equity in the Property; therefore, the
Property is not necessary for effective reorganization.  The current unpaid principal
balance due under the loan documents is approximately $45,500.94.   The Property is
most recently valued at $28,337.00 by the Crisp County Tax Assessor's Office.

Movant's total claim amount, itemized below, is approximately $47,490.85.

| | |
|---|---|
| Principal Balance | $45,500.94 |
| Interest Balance | $1,023.76 |
| Late Charges Due | $16.15 |
| Fees Assessed | $950.00 |
| Total Due | $47,490.85 |

6.

To the best of Movant's knowledge and belief, there are no other secured claims against the Property.

7.

Debtor(s) may contact Movant at the address and telephone number below in regard to any potential loan workout or loss mitigation opportunities.

| |
|---|
| Selene Finance LP<br>9990 Richmond Ave, Suite 400 South<br>Houston, TX 77042<br>877-768-3759 |

8.

Movant's security interest in the Property is not adequately protected due to the Debtor(s)' failure to maintain the mortgage payments.

9.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

10.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack

of adequate protection, exists for the automatic stay to be terminated.

11.

In the event that a hearing cannot be held within thirty (30) days from the date of the filing of this Motion, Movant, through its counsel, hereby waives the requirements of 11 U.S.C. § 362(e).

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

and said Order also instructing the Chapter 13 Trustee to cease

disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

3002.1 shall no longer apply as to Movant, as said Rule only

applies in Chapter 13 cases in which claims secured by a principal

residence are provided for under Section 1322(b)(5) of the Code in

the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: November 16, 2021

**Robertson, Anschutz, Schneid, Crane &
Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Movant
Georgia Bar #432863
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

## CERTIFICATE OF SERVICE

I, certify that I am over the age of 18 and that on November 16, 2021, I served a

copy of the foregoing Notice of Hearing and Motion for Relief from Automatic Stay was

served by electronic mail or by first class U.S. Mail, with adequate postage prepaid on the

following persons or entities at the addresses stated:

Pamela Jean Wellons
602 E. 3rd Ave.
Cordele, GA 31015

Cawthon H. Custer
Custer, Custer and Clark, LLC
P.O. Box 605
Albany, GA 31702

Jonathan W. DeLoach
Office of The Chapter 13 Trustee
P. O. Box 1907
Columbus, GA 31902

U.S. Trustee - MAC
440 Martin Luther King Jr. Boulevard
Suite 302
Macon, GA 31201

Date: November 16, 2021

**Robertson, Anschutz, Schneid, Crane &
Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Movant
Georgia Bar #432863
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

# SUPPORTING DOCUMENTS

# NOTE

| FHA CASE NO. |
|---|
| ▮▮▮▮▮▮▮ |

**May 09, 2007**
[Date]

**602 EAST 3RD AVENUE
Cordele, GA  31015**
[Property Address]

**1.    PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Taylor, Bean & Whitaker Mortgage Corp.**

and its successors and assigns.

**2.    BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of **Sixty Two Thousand Two Hundred Seventy Two and no/100**                                                    Dollars (U.S. $ **62,272.00**                    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    **Six and Three Quarters**

percent (        **6.7500 %**) per year until the full amount of principal has been paid.

**3.    PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.    MANNER OF PAYMENT**
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **July 01, 2007**        . Any principal and interest remaining on the first day of        **June 2037**        , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475**

or at such other place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ **403.90**                    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE                                                                                    6/96

ITEM T6432L1 (9608R)                          *(Page 1 of 3 pages)*              GREATLAND ▮
                                                                To Order Call: 1-800-530-9393 □Fax 616-791-1131

(D)  Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

[ ]  Growing Equity Allonge          [ ]  Graduated Payment Allonge

[ ]  Other [specify]

**5.   BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.   BORROWER'S FAILURE TO PAY**

(A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four**                                    percent (                    **4%**) of the overdue amount of each payment.

(B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Isaiah Z. Walker_ _____ (Seal)

Isaiah Z Walker                         -Borrower

_____ (Seal)
                                        -Borrower

_Pamela J. Wellons_ _____ (Seal)

Pamela J Wellons                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

*[Sign Original Only]*

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

_____
Erla Carter-Shaw, E.V.P.

00754
00256

After Recording Return To:
**DAVIS & FOREHAND**
**901 17TH AVENUE**
**CORDELE** , GA   31015

BOOK **754** PAGE **256**

GEORGIA, CRISP COUNTY
**FILED**
MAY 1 1 2007
*Jean H Rogers*
CLERK, SUPERIOR COURT

CRISP COUNTY, GEORGIA
GEORGIA INTANGIBLE TAX PAID
$ 189.50
DATE **MAY 1 1 2007**

*Jean H Rogers*
[Space Above This Line For Recording Data] Clerk of Superior Court

## SECURITY DEED

FHA CASE NO.

THIS SECURITY DEED ("Security Instrument") is given on **May 09, 2007**
The grantor is **Isaiah Z Walker and Pamela J Wellons**

("Borrower").This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and
Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Taylor, Bean & Whitaker**
**Mortgage Corp.**

("Lender") is organized and existing
under the laws of **FL** , and
has an address of **1417 North Magnolia Ave, Ocala, FL  34475**

Borrower owes Lender the principal sum of **Sixty Two Thousand Two Hundred Seventy Two and no/100**
Dollars (U.S. **$ 62,272.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **June 01, 2037**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS
(solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of
sale, the following described property located in **Crisp** County, Georgia:

**See Attached Exhibit A.**

GEORGIA FHA SECURITY DEED
ITEM T9704L1 (0203)—MERS          *(Page 1 of 7 pages)*

6/96
ONCATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

00754
00257

BOOK 754 PAGE 257

which has the address of                     602 EAST 3RD AVENUE
                                                  [Street]

Cordele                    Georgia              31015              ("Property Address");
[City]                                          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

GEORGIA FHA SECURITY DEED

ITEM T9704L2 (0205)—MERS          (Page 2 of 7 pages)          GREATLAND ■
                                                  To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

00754
00258

BOOK 754 PAGE 258

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.  Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

GEORGIA FHA SECURITY DEED

ITEM T9704L3 (0205)—MERS                    (Page 3 of 7 pages)                    GREATLAND ■
                                                                   To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

00754
00259

BOOK 754 PAGE 259

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   Fees. Lender may collect fees and charges authorized by the Secretary.

9.   Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.   Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA FHA SECURITY DEED

ITEM T9704L4 (0205)—MFPrs                          *(Page 4 of 7 pages)*                    GREATLAND ■
                                                                          To Order Call: 1-800-530-9393 □ Fax 616-791-1131

00754
00260

BOOK 754 PAGE 260

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

GEORGIA FHA SECURITY DEED

ITEM T9704L5 (0205)—MERS                    (Page 5 of 7 pages)                    GREATLAND ■
                                                                      To Order Call: 1-800-530-9393 □ Fax 616-791-1131

00754
00261

BOOK 754 PAGE 261

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

21. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider     ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Adjustable Rate Rider       ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

**GEORGIA FHA SECURITY DEED**

ITEM T9704LB (0008)—MERS    *(Page 6 of 7 pages)*    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

00754
00262

BOOK 754 PAGE 262

BORROWER ACCEPTS AND AGREES to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____                    _Isaiah Z Walker_____ (Seal)
Unofficial Witness                                               Isaiah Z Walker                    -Borrower

_____
Notary Public;                                County                _____ (Seal)
                                                                                                              -Borrower

My commission expires:
Notary Public, Tift County, Georgia             _Pamela J. Wellons_____ (Seal)
My Commission Expires Sept. 9, 2007              Pamela J Wellons                  -Borrower

                                                                        _____ (Seal)
                                                                                                              -Borrower

                                                                        _____ (Seal)
                                                                                                              -Borrower

                                                                        _____ (Seal)
                                                                                                              -Borrower

GEORGIA FHA SECURITY DEED
ITEM T9704L7 (0205)—MERS                  (Page 7 of 7 pages)          To Order Call: 1-800-530-9393 □ Fax 616-791-1131     GREATLAND ■

00754
00263

BOOK **754** PAGE **263**

**EXHIBIT A**
**LEGAL DESCRIPTION**

That certain house and lot in the City of Cordele, Crisp County, Georgia, fronting
North 100 feet on the South side of Third Avenue and extending back South a
distance of 160.3 feet along the East side of Second Street and being all of Lot
Number Two (2) and all of Lot Number One (1) except 26.9 feet off the East end
of Lot Number One (1), and all of Lot Number Three (3), except 26.9 feet off the
East side of Lot Number Three (3), in Block Number Three Hundred Fifty-Seven
(357), according to the Official Map of Survey of Cordele, Georgia, dated
November 17, 1942, and being more particular described as follows: START at
the intersection of the South side of Third Avenue and the East side of Second
Street, the point of beginning, and then run East along the South side of Third
Avenue a distance of 100 feet; thence turn right at an inside angle of 88 degrees
18 minutes and run South a distance of 160 feet to the North side of a public
alley; then turn right at an inside angle of 91 degrees 42 minutes and run West a
distance of 104.5 feet along the North side of a public alley to the East side of
Second Street; then turn right at an inside angle of 86 degrees 46 minutes and run
North along the East side of Second Street a distance of 160.3 feet to the point of
beginning, making an inside angle with the South side of Third Avenue of 93
degrees 14 minutes.

*Isaiah Z Walker*

*Isaiah Z Walker*

00754
00264

BOOK **754** PAGE **264**

GEORGIA- FHA

GRANTOR: Isaiah Z Walker, Pamela J Wellons

LENDER:    Taylor, Bean & Whitaker Mortgage Corp.

DATE OF SECURITY DEED: 5/9/2007

LOAN NUMBER: ████

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISION OF THE PARAGRAPH 17 HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 17 HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 17 OF THIS DEED AND ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered
in the presence of:

NOTARY PUBLIC, Tift County, Georgia
My Commission Expires Sept. 9, 2007

_Isaih Z Walker_ (Seal)
Isaiah Z Walker                    Grantor
                                   (Seal)
_Pamla J Wellon_                   Grantor
                                   (Seal)
Pamela J Wellons                   Grantor
                                   (Seal)
                                   Grantor
                                   (Seal)
                                   Grantor

**CLOSING ATTORNEY'S AFFIDAVIT**

RE: Borrower(s): **Isaiah Z Walker, Pamela J Wellons**

Lender:   **Taylor, Bean & Whitaker Mortgage Corp.**

Date:   **5/ 9/2007**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights.

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Closing Attorney

Sworn and subscribed before me
this 5|9|07

Notary Public
Notary Public, Tift County, Georgia
My Commission Expires Sept. 9, 2007

BOOK **924** PAGE **325**

GEORGIA. CRISP COUNTY
**FILED**

٤٠٠٢٢          **JAN 0 2 2013** 10:45 AM

*Jeanel Rogers*
CLERK. SUPERIOR COURT

This space for Recorder's use

| | Recording Requested By: | When recorded mail to: |
|---|---|---|
| ▮▮▮▮▮▮▮ | **Bank of America** | **CoreLogic** |
| | Prepared By: | Mail Stop: ASGN |
| | **Diana De Avila** | **1 CoreLogic Drive** |
| Property Address: | **800-444-4302** | **Westlake, TX 76262-9823** |
| **602 E 3rd Ave** | **1800 Tapo Canyon Road** | |
| **Cordele, GA 31015-3609** | **Simi Valley, CA 93063** | |
| GA0v2M-ASD20727651    12/19/2012  BK01 | | |

MIN ▮▮▮▮▮▮▮▮          MERS Phone #:  888-679-6377

## ASSIGNMENT OF SECURITY DEED

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.** its successors and assigns whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** hereby assign and transfer to **BANK OF AMERICA, N.A.** its successors and assigns whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all its right, title, and interest to a certain Security Deed described below.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.** |
| Made By: | **ISAIAH Z WALKER AND PAMELA J WELLONS** |
| Date of Security Deed: | **5/9/2007** |
| Original Loan Amount: | **$62,272.00** |
| Certificate of Title Number: | **ABSTRACT LAND** |

Recorded in **Crisp County, GA** on: **5/11/2007**, book **754**, page **256** and instrument number **N/A**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on *12-27-12*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.**

By: *Mary Ann Hierman*
~~MARY ANN HIERMAN~~
~~ASSISTANT SECRETARY~~

By: *(signature)*
~~Talisha Wallace Assistant Secretary~~

Witness: *Jeanine Abramoff* Jeanine Abramoff

Witness: *(signature)* Mercedes Judilla

BOOK  **924** PAGE  **326**

State of **California**
County of **Ventura**

On __DEC 2 7 2012__ before me, _____**Daisy Chavez**_____, Notary Public, personally
appeared _____Mary Ann Hierman_____ and __Talisha Wallace__, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

_Daisy Chavez_

Notary Public: _____Daisy Chavez_____    (Seal)
My Commission Expires: ___June 5, 2015___

DAISY CHAVEZ
Commission # 1939846
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2015

DocID#

BOOK **992** PAGE **112**

GEORGIA, CRISP COUNTY
**FILED**

0884      APR 2 2 2015   4:00 pm

*Jean H Rogers*

CLERK, SUPERIOR COURT

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

# ASSIGNMENT OF SECURITY DEED

*FOR VALUE RECEIVED*, **BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS**, whose address is c/o Selene Finance LP, 9990 Richmond Ave, Ste 400 South, Houston, TX 77042, does hereby assign and transfer to **SELENE FINANCE LP**, whose address is 9990 RICHMOND AVE, STE 400 S, HOUSTON, TX 77042, all its right, title and interest in and to the described Security Deed executed by **ISAIAH Z. WALKER AND PAMELA J. WELLONS** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS** for **$62,272.00** dated **5/9/2007** of record on **5/11/2007** at Book **754** Page **256,** in the **CRISP** County Clerk's Office, State of **GEORGIA**.

Property Address: 602 EAST 3RD AVENUE, CORDELE, GEORGIA 31015

Executed this _____ 3-25-2015 _____.

**BANK OF AMERICA, N.A. BY SELENE FINANCE LP, ATTORNEY IN FACT**

_____ (Titled Witness)
By:   JASON BURR
Title:   ASSISTANT VICE PRESIDENT

By:   DONNA BRAMMER
Title:   VICE PRESIDENT                    _____ (Witness)
Georgia must be signed by a Vice President or       By:   Cumbie
higher

BOOK   992 PAGE   113

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on   3.25.2015   by DONNA BRAMMER the VICE PRESIDENT and JASON BURR of SELENE FINANCE LP, A DELAWARE LIMITED PARTNERSHIP, AS ATTORNEY IN FACT FOR BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS, on behalf of said corporation.

Notary Public in and for the State of TEXAS
Notary's Printed Name:  JAIMEE COOK
My Commission Expires: 1/30/2016



JAIMEE COOK
Notary Public
STATE OF TEXAS
My Comm. Exp. 01/30/2016

For 62272 dated 5/9/2007

**Crisp County, GA**

## Summary

| | |
|---|---|
| Parcel Number | ▇▇▇▇ |
| Location Address | 602 E 3Rd AVE |
| Legal Description | BL357 L2 PT 1 & 3 |
| | (Note: Not to be used on legal documents) |
| Class | R3-Residential |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| Tax District | CORDELE (District 02) |
| Millage Rate | 39.063 |
| Acres | 0 |
| Homestead Exemption | No (S0) |
| Landlot/District | N/A |



[View Map](#)

## Owner

**WALKER ISIAH Z & PAMELA J WELLONS**
**602 E 3RD AVE**
**CORDELE, GA 31015**

## Land

| Type | Description | Calculation Method | Square Footage | Frontage | Depth | Acres | Lots |
|---|---|---|---|---|---|---|---|
| Residential | Res-Pine Meadow | Front Feet | 0 | 102 | 160 | 0 | 0 |

## Residential Improvement Information

| | |
|---|---|
| Style | One Family (Detached) |
| Heated Square Feet | 1216 |
| Interior Walls | Finished |
| Exterior Walls | Comp Bd/Asbestos |
| Foundation | Masonry/Crawl |
| Attic Square Feet | 0 |
| Basement Square Feet | 0 |
| Year Built | 1950 |
| Roof Type | Asphalt Shingles |
| Flooring Type | Finished |
| Heating Type | No Heat |
| Number Of Rooms | 5 |
| Number Of Bedrooms | 3 |
| Number Of Full Bathrooms | 0 |
| Number Of Half Bathrooms | 0 |
| Number Of Plumbing Extras | 0 |
| Value | $17,373 |
| Condition | Average |

## Accessory Information

| Description | Year Built | Dimensions/Units | Identical Units | Value |
|---|---|---|---|---|
| Site Imp: C | 2019 | 1x0 / 1 | 1 | $2,500 |
| Porch: Screen | 2002 | 10x12 / 0 | 0 | $522 |
| Canopy | 1991 | 20x20 / 400 | 1 | $2,432 |
| Storage Building | 1970 | 8x10 / 80 | 1 | $288 |

## Sales

| Sale Date | Deed Book / Page | Plat Book / Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 5/9/2007 | 754 265 | | $63,300 | Fair Market Sale | ASPINWALL BUCK ETAL | WALKER ISIAH Z & PAMELA J WELLONS |
| 4/23/1991 | 221 92 | | $0 | | | ASPINWALL, PATRICIA |
| 4/23/1991 | 221 92 | | $0 | | | ASPINWALL, JERRY + |

## Valuation

|   | | 2020 | 2019 | 2018 |
|---|---|---|---|---|
| | Previous Value | $28,337 | $27,937 | $27,937 |
| | Land Value | $5,222 | $5,222 | $7,834 |
| + | Improvement Value | $17,373 | $17,373 | $17,742 |
| + | Accessory Value | $5,742 | $5,742 | $2,361 |
| = | Current Value | $28,337 | $28,337 | $27,937 |

## Photos



## Sketches



**No data available for the following modules:** Rural Land, Conservation Use Rural Land, Commercial Improvement Information, Mobile Homes, Prebill Mobile Homes, Permits.

The Crisp County Assessor makes every effort to produce the most accurate information possible. No warranties, expressed or implied are provided for the data herein, its use or interpretation. The assessment information is from the last certified tax roll. All other data is subject to change.

User Privacy Policy
GDPR Privacy Notice

Last Data Upload: 11/3/2021, 6:34:13 AM

Developed by

Schneider
GEOSPATIAL

Version 2.3.157